NELSON et al. v. ZAHN GRAIN CO.

No. 30565. June 9, 1942.

Rehearing Denied June 30, 1942.

127 P. 2d 803.

A. W. Billings, of Woodward, for plaintiffs in error.

Mauntel & Spellman, of Alva, and Reuben K. Sparks, of Woodward, for defendant in error.

OSBORN, J. This action was instituted in the district court of Woodward county by the Zahn Grain Company, hereinafter referred to as plaintiff, against Leslie Nelson and Mary Nelson, hereinafter referred to as defendants. Plaintiff sought recovery of certain funds which had been advanced to defendants upon the security of a quantity of wheat stored by defendants in plaintiff's elevator, pursuant to an oral contract between the parties. Issues were joined, the cause was tried to a jury, and a verdict was returned in favor of plaintiff in the sum of $1,477.98. From a judgment on the verdict, defendants have appealed.

The nature of the transaction upon which this action is predicated is stated in plaintiff's petition as follows:

"That heretofore, to wit, and during the months of July and August, 1937, the defendants herein, Leslie Nelson and Mary Nelson, deposited, in the elevator of this plaintiff, at Sharon, Oklahoma, 6,429 bushels of wheat, belonging to the two said defendants, under an oral agreement whereby the said wheat should be held by the plaintiff herein until such time as the defendants herein should instruct and authorize the plaintiff herein to sell the said wheat, for the use and benefit(s) of said defendants; that it was orally agreed by and between the parties hereto that the plaintiff herein should advance certain monies to the defendants herein, upon said wheat, and that said defendants should, when the said wheat was sold pay to the plaintiff herein all sums so advanced, plus interest thereon at the rate of 5% per annum, plus storage and insurance on the said wheat so held by this plaintiff; that the time within which said wheat should be sold by the plaintiff for the use and benefit of the defendants was not agreed upon, but it was within the contemplation of the parties and was the understanding of the parties that said wheat should be sold within a reasonable time from the time it was deposited with the plaintiff and the money so advanced; that there is a practice well established by common usage in grain transactions in this and surrounding vicinities that such transactions shall be closed up within twelve (12) months from date of depositing wheat, in the absence of a new arrangement being made for holding wheat under such circumstances for a longer period of time."

Plaintiff alleged further that defendants stored 6,429 bushels of wheat in its elevator and against the said wheat defendants drew sums of money in the total amount of $4,637.25, and that

items of storage, interest, and insurance had accumulated in the total sum of $1,647.51; that although plaintiff made repeated demands upon defendants to sell the wheat, they refused to do so; that on January 25, 1939, plaintiff made a written demand for payment of the above-named sums of money and stated in said notice that in the event of failure to make said payment on or before February 6, 1939, said wheat would be sold in accordance with terms of the oral contract; that pursuant to said notice, the wheat was sold for the sum of $3,535.95, which was credited to the account of defendants, leaving a balance of $2,748.81, for which amount, together with interest thereon, plaintiff sought judgment.

The defendants filed separate answers and cross-petitions in which they admitted the storage of a quantity of wheat in plaintiff's elevator, but alleged that the agreement between the parties was what was known as a board of trade arrangement. Defendants further admitted the advancement to them of the sum of $4,637.25, but alleged that, under the terms of the contract, it was the duty of plaintiff, when the wheat declined in value to the amount of the money advanced plus the storage, insurance and interest, to sell and dispose of the wheat and thus protect itself and defendants against further losses; that if plaintiff suffered losses in the transaction, it was due to its own fault, negligence, and failure to comply with the contract.

In their cross-petitions, defendants alleged that the sale was illegal and amounted to a conversion of the property resulting in loss of the lien thereon and damages to them in the sum of $1,-199.89, being the difference between the reasonable value of the wheat and the sums advanced to them. For said amount together with interest thereon, defendants sought judgment against plaintiff.

There was a sharp conflict in the evidence as to the nature and terms of the oral contract. The pricipal point of difference related to the placement of responsibility for failure to sell the wheat at a time when the market price was sufficient to reimburse plaintiff for funds advanced and charges for storage and handling. The issues of fact were submitted to the jury and a verdict was rendered in favor of plaintiff and the amount of recovery was fixed at $1,477.98. The jury found against defendants upon the issues raised by the cross-petitions.

It is urged first that plaintiff was not entitled to maintain this action in the absence of a compliance with the requirements of 68 O. S. 1941 § 1515, which is one of the provisions of the Intangible Personal Property Tax Act. Said section provides that no suit or action in any court for the collection of any bond, note, or account receivable may be maintained in the absence of allegations and proof that the property was assessed for taxation under the act and that all taxes, interest and penalties assessed upon the property have been paid.

It has been recently determined that the above section has no application to an action to enforce an unliquidated claim or demand. Lumberman's Supply Co. v. Neal, 189 Okla. 544, 119 P. 2d 1017, 1018; World Fire & Marine Ins. Co. v. Snyder, 190 Okla. 271, 122 P. 2d 812.

In the case of Casper v. Mayer, 171 Okla. 457, 43 P. 2d 471, it was said:

" 'Liquidated account' has been defined to be 'one the amount of which is agreed upon by the parties or fixed by operation of law.' 2 Bouv. Law Dict. 261. And in the same volume, at page 263, a 'liquidated debt' is defined: 'A debt is such when it is certain what is due and how much is due.'

"And this court, in the case of Sherman v. Pacific Coast Pipe Co., supra, quoted with approval and adopted the definition given by the Supreme Court of the United States in the case of Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099: 'The word "liquidated" is used in different senses, and as applicable here means made certain as to what and

how much is due; made certain by agreement of the parties or by operation of law.' "

For other definitions see vol. 25 Words & Phrases (Perm. Ed.) p. 336 et seq., and vol. 43 Words & Phrases (Perm. Ed.) p. 321 et seq.

It is unnecessary to define or determine the exact nature of the claim or demand involved herein. Suffice it to say that the same is an unliquidated demand and that the above cited provisions of the Intangible Personal Property Tax Law have no application.

Having taken this view of the matter, it is unnecessary to consider the other propositions presented.

The judgment is affirmed.

WELCH, C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., and DAVISON, J., absent.