UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY, a corporation,
Plaintiff in Error,

v.

Billy Joe WEBB and Willie Faye Webb,
same person as Willie Faye Jones,
et al., Defendants in Error.

No. 42573.

Supreme Court of Oklahoma.

Nov. 24, 1970.

Tom Finney, Neal Merriott, Idabel, for plaintiff in error.

Donald M. Stevenson, Idabel, for defendants in error.

LAVENDER, Justice.

This action was commenced in the trial court by the United States Fidelity and Guaranty Company, a corporation, against the defendants Billy Joe Webb and Willie Faye Webb, the same person as Willie Faye Jones, to recover on a promissory note of the Webbs and to foreclose a real estate mortgage given to secure said note. Additional parties, including one Clarence D. Jones, were joined as defendants to foreclose and exclude them from any claims to the real property involved.

After a trial to the court without a jury and after a judgment of that court denying the plaintiff any relief on its petition

and after the plaintiff's motion for new trial was overruled, the plaintiff brought the matter to this court for review. The parties will hereafter be referred to by name or by their respective trial court designations.

It is not necessary to discuss the petition other than to say that it alleged payment of the note and an assignment to plaintiff by the holder, the First State Bank of Idabel, Oklahoma. The defendant Billy Joe Webb failed to answer and made default. The defendants in error, Willie Faye Webb (now Willie Faye Jones) and Clarence D. Jones, filed their answer and cross petition. That instrument substantially and in effect alleges that defendant Willie Faye Webb (now Jones) executed the note and mortgage along with her then husband, Billy Joe Webb. That she and Webb were thereafter divorced and she was awarded the property which is the subject of the mortgage. That thereafter Webb, joined by his former wife, Willie Faye Webb Jones, executed a deed conveying the property to Clarence D. Jones (who she had subsequently married) and to herself as joint tenants. That plaintiff and mortgagee were notified of the conveyance. Defendants then alleged that, on or about the same date the promissory note and mortgage were executed and delivered, the plaintiff issued its policy of fire insurance covering the improvements upon the mortgaged premises in the face amount of $5,000.00; that said policy of insurance contained a mortgage clause providing a loss payable to the mortgagee. That the premiums were all paid in full but that the policy of insurance was retained by the mortgagee. That the insured building was destroyed by fire and thereafter the plaintiff paid to the mortgagee the sum of $4,582.36, the full balance of the note. The defendants Jones further alleged that by reason of the insurance policy the plaintiff was obligated to the answering defendants for the value of the burned building up to the face amount of the policy and that the building was then worth $5,000.00 wherefore defendants prayed for recovery of the $417.64 difference against the plaintiff. (The judgment of the trial court did not award defendants the damages referred to in the past preceding sentence and no appeal from that omission was lodged in this court.)

The plaintiff insurance company replied to the answer and filed its answer to the defendants' cross petition. The plaintiff admitted that it had issued a policy of fire insurance upon the mortgaged premises but alleged that said policy was issued to the defendant, Billy Joe Webb, who did not own the property at time of the loss and that therefore plaintiff was not liable upon the policy to either Billy Joe Webb, the named insured, nor to Willie Faye Webb (now Jones), who was not named on the policy, notwithstanding she was one of the parties to the note and mortgage. A provision in the policy of insurance was referred to in plaintiff's reply which appears to authorize the insurer to succeed to all of the rights of the mortgagee in the event insurer is required to pay the note under the mortgage clause of its policy of insurance.

No one contends that the insurance company, plaintiff, was not liable to the mortgagee bank. It is apparently the defendants' position that such payment inured to their benefit just as if they had been named insureds on the policy.

The facts were largely undisputed. They are, insofar as pertinent, as follows:

At the time the promissory note and mortgage involved here were made and delivered, the mortgagors, Billy Joe Webb and Willie Faye Webb, were husband and wife. The First State Bank of Idabel, mortgagee, required the Webbs to insure the improvements with a loss payable clause in favor of the bank. One Alice W. was contacted to write the policy of insurance. She was the agent for plaintiff in the town of Idabel. She testified the initial contact with her about writing the insurance was made by the mortgagee bank. She also testified that the "owners" were not required to sign an application. In answer to the question whether she was "aware of the ownership

of the property" she stated, "Yes, and my invoice was made to Mr. and Mrs. Billy Joe Webb. I didn't know her given name." She was not instructed by anyone to show only Billy Joe Webb as the named insured. She then testified that the loss occurred on the 14th of October and shortly after that the bank notified her of the loss. Pursuant to that notice she notified the company. Its adjustor subsequently adjusted the loss, by the payment above mentioned, to the mortgagee, First State Bank of Idabel. The agent further testified that at the time of the loss in October the premiums had all been paid up to the following February and that none of these premiums were refunded.

Clarence D. Jones was the only other witness. He testified that the conveyance from Billy Joe Webb and Willie Faye Webb to himself and Willie Faye Jones was reported to the bank and that the latter knew he was one of the owners. On cross-examination it was brought out that after January, 1964, Willie Faye Jones (then Webb) no longer lived on the mortgaged property with Billy Joe Webb claiming it as her homestead.

Summarizing the pleadings and the evidence then, we think it reasonably appears that at the time the Webbs gave their note and mortgage to the bank they were the joint owners of the real estate and were occupying it as their homestead. As a consequence of this situation, both of them were required to execute the note and mortgage. In the mortgage they were contractually bound to acquire and maintain during the term of the note and mortgage, and at their expense, a policy of fire insurance with a standard mortgage loss payable provision in favor of the mortgagee bank. Rather than the Webbs contacting the agent of the plaintiff insurance company and ordering the policy, the bank took care of it. The bank was also the party which notified the insurer of the loss when it occurred.

It simply would not be common sense to accept the plaintiff's proposition that it only

intended to write insurance on the interest of one of the joint owners-mortgagors at the time its agent prepared the policy in this case. The agent then knew that the property was owned by both of the Webbs and we think it is reasonable to say that she was also aware that it was occupied by them as their homestead and that they had just signed a note and secured its payment with a mortgage upon both of their respective interests in the property when the bank called her to write the policy of insurance. In fact, there appears from the testimony of the agent an inference that she would have included the wife as a named insured on the policy if she had known her given name. The following is an excerpt from the record of the testimony of the agent:

"Q. And at that time, Mrs. Westbrook, was an application made by the owners of the property for this policy?

"A. No, they were not required to sign an application.

"Q. Mrs. Westbrook, at this time were you aware of the ownership of this property?

\* \* \* \* \* \*

"A. Yes, and my invoice was made to Mr. and Mrs. Billy Joe Webb. I didn't know her given name.

"Q. Was it at anyone's direction other than your own that you only put the name of Billy Joe Webb on your policy?

"A. No, I had no instruction on that.

"Q. You were aware of the ownership?

"A. Yes."

We think that under these circumstances the bank was acting as the agent of both of the Webbs when it contacted the agent and requested the insurance and when it thereafter notified the company of the loss. It was the intent of the Webbs that the policy include both of them and it was the result of inadvertence and mistake on the part of either the bank or the agent, or both of them, that only Billy Joe Webb's name appeared on the policy. The policy is

therefore subject to reformation in equity on the ground of a mutual mistake of a material fact. American Insurance Co. v. Jueschke (1925), 110 Okl. 250, 237 P. 585. Upon review of the record, this court is authorized to consider the policy reformed, if equity demands it, even though such relief was not prayed for nor granted in the trial court. Fidelity-Phoenix Fire Ins. Co. v. First National Bank of Marietta (1930), 145 Okl. 289, 292 P. 829. See also Security Ins. Co. of New Haven, Conn. v. Deal et al. (1936), 175 Okl. 450, 53 P.2d 271.

The plaintiff's Proposition IV to the effect that Willie Faye Webb (now Jones) was not a party to the original contract of insurance is, we hold, without merit.

Plaintiff's other propositions are no longer relevant considering our disposition of the primary issue presented by plaintiff's fourth proposition.

There is no substantial contention that Willie Faye Webb (now Jones) was not the owner of an insurable interest in the property insured, not only at the time of the issuance of the policy, but from that time continuously to the time of the loss. We hold that the payment by the insurance company to the bank inured to the benefit of Willie Faye Webb (now Jones) and that the trial court's judgment against the plaintiff was not error.

All of the Justices concur.